UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

GENESIS HOSPICE CARE LLC,    CASE NO. 08-15576-NPO

DEBTOR.    CHAPTER 11

MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR WAIVER OF APPOINTMENT OF PATIENT CARE OMBUDSMAN

On February 4, 2009, there came on for hearing (the "Hearing") the Order Directing Appointment of Patient Care Ombudsman (Dk. No. 12) (the "Order") issued by the Court; the Motion for Waiver of Appointment of Patient Care Ombudsman (Dk. No. 16) (the "Motion") filed by Genesis Hospice Care LLC (the "Debtor"); and, the United States Trustee's Response to Debtor's Motion for Waiver of Appointment of a Patient Care Ombudsman (Dk. No. 18) (the "UST's Response") filed by R. Michael Bolen, the United States Trustee for Region 5 (the "UST") in the above-styled chapter 11 proceeding. Gwendolyn Baptist-Hewlett represented the Debtor, and Christopher James Steiskal represented the UST. The Court, being fully advised in the premises and having considered the pleadings, evidence, authorities, and arguments presented by counsel, finds as follows:[1]

1. The Debtor initiated this voluntary chapter 11 case by the filing of a petition (Dk. No. 1) (the "Petition") on December 29, 2008.

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

2. On the Petition, the Debtor indicated that the nature of its business is "Health Care Business."

3. On January 9, 2009, this Court entered the Order and directed the UST to appoint a disinterested person to serve as a patient care ombudsman[2] ("PCO") pursuant to 11 U.S.C. § 333[3] unless a motion to dispense with the appointment was filed as provided in Federal Rules of Bankruptcy Procedure 1021(b) and 2007.2(a).

4. On January 26, 2009, the Debtor filed its Motion. The next day, the UST filed the UST's Response.

5. At the Hearing on the Motion and the UST's Response, the Debtor took the position that a patient care ombudsman is not necessary "for the protection of patients" under the specific facts of this case. The UST asserted that the Debtor's contentions, on their own, were insufficient evidence to prove that a PCO is not necessary and that a hearing was required wherein the Debtor had "the burden to provide testamentary and documentary evidence to the Court regarding, but not limited to, the current level

---

[2] According to Collier on Bankruptcy, "[t]his ombudsman is, apparently, to serve as a 'patient advocate' - one who can speak for the consumers of the health care business's services who might have different interests than those of the health care business's creditors - monitoring the quality of patient care, representing the interests of patients and reporting to the bankruptcy court every 60 days on the status of patient care in the debtor's health care business." 3 Collier on Bankruptcy, § 333.01 (Matthew Bender 15th Ed. Rev. 2005).

[3] Section 333(a)(1) provides that if the debtor in a case under chapter 11 is a health care business, the court "shall order . . . the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."

of patient care and whether the Debtor is in compliance with all state and federal regulatory requirements for patient care."

6. The question before the Court, then, is whether a PCO should be appointed for this health care business. The Court has considered a number of factors in determining whether a patient care ombudsman is needed. According to <u>Collier on Bankruptcy</u>, "[f]acts that warrant a decision not to appoint an ombudsman could include that the facility's patient care is of high quality, that the debtor has adequate financial strength to maintain high-quality patient care, that the facility already has an internal ombudsman program in operation or that the situation at the facility is adequately monitored already by federal, state, local or professional association programs so that the ombudsman would be redundant." 3 <u>Collier on Bankruptcy</u>, § 333.02 (Matthew Bender 15th Ed. Rev. 2005).

7. Charlene Brandon ("Brandon"), the president of the Debtor, testified that the Debtor employs various medical personnel, including RNs, CNAs, LPNs, and therapists who provide outpatient medical care to patients in their homes or nursing homes. Brandon stated that the Debtor also distributes medicines, medical supplies, and medical equipment to patients. Brandon established that the Debtor provides such services upon physician, hospital, nursing home, or community referrals. The patient care is overseen by an interdisciplinary team which meets every other week. Brandon testified that the Debtor is in compliance with all state and federal regulatory agency requirements. Brandon also stated that the Debtor has an established internal complaint process. Finally, Brandon attested that the Debtor's financial difficulties,

which arose as a result of recoupment of payments by Medicare, have not and should not affect patient care.

8. Application of the above-referenced factors to this case persuades the Court that the appointment of a PCO is not necessary for the protection of patients. *See* § 333(a)(1); Fed. R. Bankr. P. 2007.2(a). The Debtor has established that it provides only outpatient care, which lessens the need for the appointment of a PCO to insure a continuity of day-to-day care for patients. The Debtor also has implemented a basic internal ombudsman program to handle patient complaints, and is in compliance with regulatory agency requirements. *See* In re 7-Hills Radiology, LLC, 350 B.R. 902 (Bankr. D. Nev. 2006) (no patient care ombudsman appointed where radiological services were performed only at the request of a referring physician); *see also, e.g.*, In re Total Woman Healthcare Ctr, 2006 WL 3708164 (Bankr. M.D. Ga. Dec. 14, 2006) (finding appointment of ombudsman unnecessary where debtor provided outpatient care at her office or performed medical procedures at area hospitals where hospital staff provided additional patient care, where no complaints had been received since bankruptcy filing, and where neither office staff nor patient scheduling had changed due to bankruptcy).

9. Nevertheless, should the Debtor experience any negative trend which indicates the need for the appointment of a PCO in the future, the Court anticipates the filing of an appropriate motion so that the Court might reconsider such an appointment. *See* Fed. R. Bankr. P. 2007.2(b) ("[T]he court, on motion of the United States trustee, or a party in interest, may order the appointment at any time during the case if the court

finds that the appointment of an ombudsman has become necessary to protect patients.").

IT IS, THEREFORE, ORDERED that the Motion is well taken and that the appointment of a PCO is not necessary for the protection of patients in the above-styled chapter 11 proceeding.

A separate final judgment consistent with this Memorandum Opinion will be entered by this Court in accordance with Federal Rule of Bankruptcy Procedure 9021.

SO ORDERED, this the 23rd day of February, 2009.

_____
NEIL P. OLACK
U.S. BANKRUPTCY JUDGE